BALLARD *v.* BALLARD *et al.*

(In Banc.  Jan. 14, 1946.  Suggestion of Error Overruled Feb. 25, 1946.)

[24 So. (2d) 335.  No. 35991.]

C. R. Bolton, of Tupelo, and W. C. Sweat, of Corinth, for appellant.

Blair & Anderson and Mitchell & Clayton, all of Tupelo, and Reynolds Cheney, of Jackson, for appellees.

Green & Green and Reynolds Cheney, all of Jackson, for appellees.

Argued orally by C. R. Bolton, for appellant, and by E. R. Holmes, Jr., for appellees.

L. A. Smith, Sr., J., delivered the opinion of the court.

Appellant, as complainant, filed her original bill in the Chancery Court of Lee County against appellees, Walter E. Ballard and the Tupelo Floral Corporation, as defendants, praying for separate support and maintenance from appellee Ballard and also for an injunction restraining him "from leaving the jurisdiction of this court for the purpose of obtaining a divorce from the complainant or in any manner affecting the rights of complainant either as to her right to alimony or as to a divorce from complainant or in any other manner as to the marital status of complainant and Walter E. Ballard in any other court than the Chancery Court of Lee County, Mississippi, the domicile of the marital status of complainant and defendant and the present domicile of each of said parties." The prayer of the bill was also, as against both appellees, the establishment of "the right of complainant to the stock in the Tupelo Floral Corporation held by defendant, Walter E. Ballard and declaring complainant to be the equitable owner thereof as being held in trust for her by said defendant, and directing that transfer of said stock be made to said complainant."

Appellees filed an answer putting in controversy the issues raised by the original bill, and appellee Ballard filed a cross-bill seeking a divorce from appellant on grounds therein alleged. Objection was not pressed by appellees against the above procedure and they prosecuted no cross-appeal.

When the suit came on for trial, appellee Ballard moved the court for leave to dismisss this cross-bill without prejudice. To this, the appellant objected. After duly considering the matter, the trial court entered an order that "such motion be sustained and said cross-bill be and same is dismissed insofar as same applies to a claim for divorce." The suit was thereupon tried on bill, answer and

proof, and at its conclusion a final decree was entered denying complainant a resulting trust in ninety-seven shares of stock in the Tupelo Floral Corporation standing in the name of appellee Ballard; holding that appellee Ballard was without legal grounds for separation from appellant, his wife, and owed her the legal duty of permanent support and maintenance, and award was accordingly made to her for same and for solicitor's fees; and "to insure the complainant the full protection of this decree, and to prevent the sale or transfer of the interest of the defendant, Walter E. Ballard, or the defendant, Tupelo Floral Corporation," a lien was fixed upon all of the stock owned by Ballard in the Tupelo Floral Corporation and upon the property owned individually by him; the prayer for the injunctive relief sought was denied.

From those parts of this decree denying appellant's prayer that she be declared the owner of the stock in the Tupelo Floral Corporation in the name of Walter E. Ballard, and denying that it was in equity her property, and refusing to enter a decree directing its transfer to appellant as the true and equitable owner thereof, and denying her prayer for an injunction against him suing her for divorce in any other jurisdiction, an appeal here was granted appellant without prejudice to her right to receive the allowances for separate support and maintenance and solicitor's fees.

The main controversy on the merits is on the issue as to the ninety-seven shares of stock standing in the name of appellee Ballard in the Tupelo Floral Corporation, which appellant claims in equity is her property by virtue of a resulting trust. The parties were married in 1912, and they have a son twenty-four years of age who is in the Army. The parties lived together until August 1943, when appellee Ballard left appellant under circumstances which the chancery court held were no justification for leaving his wife, and in which we concur, and awarded her separate maintenance and solicitors's fees, and no appeal was taken from that part of the final decree either by appellant or appellee Ballard. At the time of the sep-

aration, appellee Ballard had threatened to go to Reno, Nevada, and later repeated the threat to go to Reno or Arkansas, if she resisted his desire for a divorce.

There was in 1922 a copartnership in the City of Tupelo composed of a man named Mabry and a man named Smith, trading under the name of Tupelo Floral Company. Appellee Ballard conceived the idea of purchasing the interest of Smith therein, which was for sale, and did so by paying so much in cash and executing his note for the balance. At the time, his wife had in the Bank of Tupelo on time deposit $3,708.70, consisting of $2,400 given her by her mother, with accretions of interest. He suggested to her that he would have to pay the bank eight per cent interest for a loan from it, and that if she would lend this money to him so he could discharge his obligation, he would pay her the same rate of interest she was receiving from the bank. To this, she assented. This is what he says occurred. On the contrary, she says, that having confidence in him, she entrusted the money to him for investment and did not lend it to him. However, in her testimony, when asked if she expected him to repay it, she replied that she did in a round-about way in the household expenses and in the business. This was an issue of fact, which we think was rightly adjudged by the chancery court against appellant.

According to the evidence, it seems that appellee Ballard repaid this amount, principal and interest, by making various deposits to her account in the Bank of Tupelo between October 23, 1925, and July 26, 1932. She loaned him $3,700 in 1922, which left to her credit $8.70, and within the period mentioned the account to her credit was built up from that sum to $6,234.53, which, he and she both say, was largely made up of sums he deposited there to her credit. These deposits by him, after excluding some interest, the sums she deposited, and some withdrawals, were more than sufficient to repay the loan.

In 1931, appellee's copartner in the Tupelo Floral Company, Mabry, died. The firm was heavily in debt, and litigation was impending between appellee Ballard and

the widow of his deceased partner Mabry. The difficulties were resolved apparently by his assumption of all of the debts of the copartnership, both to the bank of more than $20,000, and to others of several thousand dollars more. In 1933, affairs became quite difficult with the floral business, and the personal financial affairs of appellee Ballard. In March 1934, Ballard went into voluntary bankruptcy. In September 1933, the Bank of Tupelo sold the assets of the Tupelo Floral Company for indebtedness to the bank to a director of the bank named Baker. Baker, for $1 and other valuable considerations, conveyed it to appellant, who executed a trust deed for $8,760 on the same property for the benefit of the bank. A corporation called the Tupelo Floral Corporation was chartered in August 1933. Its capital stock was $10,000, and the par value of its shares was $100 each. Its entire assets consisted of the properties of the copartnership, passing through Baker to appellant, and through her by conveyance to the corporation in February 1934. After the corporation was formed, appellant, as stated, conveyed these same properties to the corporation, of which she became president and appellee Ballard assistant-treasurer. The day following her conveyance of these same properties to the Tupelo Floral Corporation, she signed a trust deed thereon by the floral company as president thereof to secure payment of $9,110 due the Bank of Tupelo.

He managed the business, although she assisted in some details of delivering flowers and fashioning floral designs. The incorporators were appellant and two brothers of appellee Ballard, and to each of them one share of stock was issued and ninety-seven shares were issued to Ballard, himself. He said that he did not want his status of a bankrupt to involve these properties, and wanted to retain the properties so he could work the business out of debt, and for these reasons the above conveyances and trust deeds were used. He did not list the ninety-seven shares of stock in his bankruptcy proceedings as he left the details to his attorneys. She says that she knew

nothing about the ninety-seven shares of stock being in his name until after the separation. Nothing appears in the record as to who signed the certificates of stock in the Tupelo corporation, of which she was President, although it is manifest that such certificates were issued. Since the stock was issued in his name, it is obvious that he did not regard his operation of the corporation as her property, but as his. But she argues that since the property was hers on account of the facts above set out, the stock was hers in equity as a resulting trust, which he denied, as stated, by virtue of the facts also. The chancellor held that appellee Ballard had repaid appellant in full before these transactions took place, and that she put nothing into the corporation whatsoever. It will be borne in mind that appellee Ballard assumed the payment of and paid the Bank of Tupelo in full, and most of the other creditors of the Tupelo Floral Company. Accordingly, decree was entered against appellant on this issue, as stated supra, and since the issue was factual and the evidence conflicting, and we are unable to say that the chancellor was manifestly wrong, under familiar rules, we do not disturb his findings. This conclusion makes it unnecessary to discuss the various legal authorities on Trusts in the briefs of appellant.

In the opinion of the chancellor, with reference to the injunctive feature of this suit, he construed the prayer for an injunction as one to restrain the defendant from leaving the state, and held that under the proof he was not warranted in entering such a decree, saying: "I seriously doubt whatever the proof might be that this court could force any citizen to continuously reside within the borders of the State for any purposes whatever with the possible exception that in a proper case a writ ne exeat could be issued and bond required assuring the presence of the defendant in court." Miller v. Miller, 173 Miss. 44, 159 So. 112, is cited. In the Miller case, the wife prayed that her husband be enjoined from further prosecution of his suit in Arkansas and from entering into the

bonds of matrimony with the named defendant with whom he was then living in adulterous relation, and also restraining transfer or encumbrance of certain property. Upon the filing of this bill, the preliminary injunction prayed for was issued and a copy thereof was delivered to the husband in Arkansas, also served upon his counsel and all resident defendants, but he proceeded with his suit and secured a decree dissolving the marriage. The wife thereupon filed a supplemental bill setting up these facts, and denying the validity of the Arkansas divorce. The husband answered, denying all charges of fraud or wrongdoing in the obtaining of the divorce. The injunction feature faded out of the case, and the Arkansas divorce was held to be invalid, without effect upon the marital status of the parties in this state, and awarded the wife a divorce because he had not established a domicile in Arkansas in good faith but simply for the purpose of obtaining a divorce. Since we therefore do not think the situation in the case at bar and the Miller case are sufficiently similar on the injunction issue, in our judgment it is not authority for the issuance of the very broad injunction sought here.

We have held that a citizen of a state may be enjoined from prosecuting against another citizen of that state an action in a foreign jurisdiction for the purpose of evading the law of his own state. Fisher v. Pacific Mutual Life Insurance Company, 112 Miss. 30, 72 So. 846. But we have not had cited to us, nor can we find, any case wherein a court has attempted to interfere with the liberty of a citizen by injunction to compel him to maintain a domicile in any particular locality. Appellant says she did not seek to restrain appellee Ballard from leaving the state. She did seek to restrain him from suing her in any other court than Lee County, Mississippi. We do not venture to hold what the result would be if she should remove from Lee County herself, thereby affecting the venue of a suit against her by him for divorce, and we limit our decision herein to the holding that the

chancellor was correct in denying the broad injunction sought and refusing, under the special facts of this particular case, to go beyond our announcement in the Fisher case, supra. Furthermore, we are of the opinion that the chancellor was correct in permitting appellee Ballard to withdraw his bill for divorce, but feel that no discussion thereof is necessary.

Since, in our judgment, the errors assigned and argued are not sustained by the record, and that the chancery court was correct, we therefore affirm its decree.

Affirmed.

**Roberds, J.,** not participating.